[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff filed this action seeking to recover a real estate broker's commission in connection with a lease by Federal Express Corporation (hereinafter "Fed Ex") of certain premises located in Windsor Locks, Connecticut. The matter was tried to this Court on October 25 and 26, 2001
STANDARD OF REVIEW:
The standard of proof in this matter is by a preponderance of the evidence. Further, much of the Court's decision is based upon the credibility of the witnesses which in turn is based upon their demeanor on the witness stand, their ability to recall or not recall accurately certain events, the consistency or inconsistency of their testimony both as to other parts of their testimony and as to other evidence in the CT Page 1433 trial, the parties' interest in the outcome and the manner in which they responded to questions on cross examination.
FACTS:
On or about January 24, 1997[1] the Defendant as Seller/Lessor entered into a commission agreement with Stein Company, (hereinafter also "Stein"), a real estate brokerage company located in Chicago, Illinois. Stein was not licensed or authorized to conduct real estate brokerage business in the State of Connecticut at the time the commission agreement was executed or at any subsequent time.
The agreement, Plaintiff's Exhibit 2, provided, in pertinent part, that the commission was $408,000.00, that the commission was to be payable in certified funds or by wire transfer to Stein's co-broker, Colliers, Dow 
Condon[2]. The commission was to be paid one half on the date of the closing of the financing for the project and the balance upon occupancy of the project. It further provided that the transaction would be based upon an installment contract, in effect a lease.
Prior to the date of the commission agreement, Stein and the Plaintiff entered into a co-brokerage agreement, Stein as agent for Fed Ex, and it was to be specifically for a Fed Ex facility to be located in the Hartford, CT. area only. The co-brokerage agreement provided that the Plaintiff would receive 20% of the commission and that Stein would receive 80%. The commission was to be paid to the Plaintiff which would then remit 80% to Stein. The co-brokerage agreement is Plaintiff's Exhibit 1.
On or about July 29, 1997 the Defendant as landlord and Fed Ex as tenant entered into a lease (Plaintiff's Exhibit 4) for premises located in Windsor, Connecticut which is part of the greater Hartford area. There are two particularly pertinent provisions of the lease as to this lawsuit. Section 33 provides: "Brokers Commissions. Each party represents to the other that the only broker used in connection with this agreement is Stein Company, whose commission landlord shall pay." Section I (b) provides: "At any time prior to Landlord's purchase of the Land, Landlord and Tenant may agree to substitute another site on which to construct the Improvements. In such event, this lease will be amended to incorporate the legal description of the new site, which new site shall then become the Land." Emphasis added.
At the time of the execution of the lease the Defendant did not own the land in Windsor. The Defendant was not able to complete the financing for the Windsor project. CT Page 1434
On February 20, 1998 a First Amendment to the Lease was signed by Fed Ex and Brookfield Windsor Locks Limited Partnership. In addition to other changes the location was changed pursuant to section 1(b) of the lease to the new location in Windsor Locks. Paragraph 33 of the lease was left unchanged.
It should be noted that Frank Fitzgerald the attorney for Brookfield Development Corporation and John Shea each owned 50% of the Defendant Brookfield Development Corporation and each became partners, with 15% each, in Brookfield Windsor Locks Limited Partnership.
On November 7, 1997 in a letter to the Plaintiff, attorney Fitzgerald at that time representing the Defendant acknowledged that the total amount due in commission for the Windsor property equals $408,000,00. Also, on July 7, 1998 attorney Daniel Matos as a representative of Brookfield Windsor Locks Limited Partnership (hereinafter "BWLLP") sent a check to Stein in the amount $204,000.00 which represented one half of the commission due which respect to the Federal Express transaction and further stated that "The balance of the commission will be paid in accordance with the Agreement which was signed by Brookfield Development Corporation." July 7, 1998 was subsequent to the First Amendment to the Lease dated February 20, 1998 and prior to the Second Amendment dated September 14, 1998. The latter amendment did not change the lease as to any provisions regarding the real estate commission. Witnesses for the Defendant stated that the reason they paid one half of the commission was because they were under pressure from Fed Ex to do so, and they did not want to ruin a long standing relationship they had with Fed Ex. The Court does not accept this testimony. The parties in the Defendant and BWLLP were sophisticated real estate investors who easily could have stated that this payment did not constitute an admission that the balance was due. The Court finds that the letter and the payment constitute an acknowledgment of the debt on behalf of Brookfield Development Corporation. The Court further finds that the execution of the lease was a closing and that there was subsequent occupancy by Fed Ex. Therefore, the terms to be fulfilled by the Plaintiff have been accomplished.
ISSUES:
 1. Do the documents constitute a binding contract between the Plaintiffand the Defendant? The short answer to this question is "yes". Plaintiff's Exhibit 2, the commission agreement, mentions the amount of the commission, that the transaction for which a commission will be paid would be either a sale or a lease, and the Defendant agreed to make commission payments to the Plaintiff. The property was listed as Windsor, Connecticut. The agreement is between Stein and the Defendant. The lease (Plaintiff's Exhibit 4) which was initially between the CT Page 1435 Defendant and Fed Ex referred to the Windsor property, and paragraph 33 acknowledged the broker to be Stein. In addition, the Defendant and Stein were both mentioned in the commission agreement between the Defendant and Stein which also mentioned and the Plaintiff and the same property. The co-brokerage agreement, Plaintiff's Exhibit 1, although not executed by the Defendant, is between Stein and the Plaintiff and refers to a Fed Ex facility to be located in the Hartford, Connecticut area. Exhibit 1 may not really be necessary to be part of the contract except that the lease refers to Stein and not to the Plaintiff. Taking Plaintiff's Exhibit 1, 2 and 3 which is the terms sheet provided by the Defendant to Fed Ex subsequently modified, and Plaintiff's Exhibit 4 which is the initial lease agreement and Exhibit 5, the First Amendment to the Lease which changes the location to Windsor Locks and substitutes BWLLP as the Landlord[3] all constitute a contract between the Plaintiff and the Defendant for a $408,000.00 commission. It is true that the term sheet refers to a $400,000.00 commission, but subsequent acknowledgments as specified above confirm that the commission is $408,000.00.[4]
 2. Is the Plaintiff entitled to a commission even though the propertyin the commission agreement is in Windsor Locks instead of Windsor? The short answer is "yes". Section 1(b) of the initial lease provides the Landlord and Tenant may agree to substitute another site on which to construct the improvements. That was done in the first amendment to the lease, Plaintiff's Exhibit 5.
3. Is the Plaintiff the proper party in this action? The answer is "yes".
Plaintiff's brief indicates that Judge Stengel has already ruled that it is. However, this Court has not been able to find in the file any ruling by Judge Stengel.
Nonetheless, it is clear to this Court that the following factors demonstrate that although the First Amendment and Second Amendment to the lease have a different landlord, namely BWLLP, the Defendant is still obligated to the Plaintiff for the real estate commission:
(a) The First Amendment of the lease references the initial lease dated July 29, 1997 and refers to the Defendant as being the landlord's predecessor in interest.
(b) Paragraph 3(a) amends the original lease to substitute BWLLP in place of the Defendant.
(c) Paragraph 4 entitled Ratification provides "Except to the extent affected by the modifications set forth in this Amendment the terms of CT Page 1436 the original lease will continue in full force and effect and the parties hereby ratify and confirm those terms."
(d) Plaintiff's Exhibit 12, the ACKNOWLEDGMENT LETTER although undated refers to the original lease agreement and the First Amendment of lease which obviously preceded the acknowledgment letter and refers to BWLLP as the successor to the Defendant. This is another basis for the Court to conclude that although BWLLP succeeded the Defendant as landlord, the Defendant remains liable under the original commission agreement and related documents. The First Amendment of the lease agreement replaces the Defendant with BWLLP, and it recites the Defendant as the predecessor in interest to BWLLP.
(e) BWLLP by its letter of July 7, 1998, Plaintiff's Exhibit 9, signed by attorney Daniel Matos on behalf of BWLLP, acknowledged that the balance of the commission will be paid in accordance with the agreement which was signed by Brookfield Development Corporation.
(f) Daniel Matos testified that the First Amendment to the lease could not have taken place without the consent or approval of Brookfield Development Corporation.
A proper analogy, perhaps, is the obligation of a mortgagor under a mortgage to a bank. When a mortgagor sells the mortgaged premises to a third party, the third party assumes the mortgage obligation. This would be true even if there were no language in the deed making reference to the assumption. The original mortgagor is still liable to the bank, mortgagee, just as Brookfield Development Corporation, the Defendant, continues to remain liable under the commission agreement even though it has allowed itself to be replaced by BWLLP. To permit Brookfield Development Corporation to be relieved from its obligation under the commission agreement by merely allowing an amendment to the lease would be inequitable to the Plaintiff, would unjustly enrich the Defendant and would be merely a subterfuge to allow the Defendant to be released from liability. It would allow any party to a contract to assign its interest and obligations to another without the consent of the other party to the contract in order to avoid responsibility. This clearly cannot stand under the law of contracts. Accordingly, this Court concludes that the Plaintiff and Defendant are proper parties to this action.
(g) Was there compliance with CGS § 20-325a (b)? Subsection (c) states as follows: "Nothing in subsection a of this section or subdivisions (2) to (6), inclusive, of subsection (b) of this section shall prevent any licensee from recovering any commission, compensation or other payment in respect to any acts done or services rendered, if such person has substantially complied with subdivisions (2) to (6), CT Page 1437 inclusive, of subsection (b) of this section and it would be inequitable to deny such recovery." Without specifying each subsection, this Court concludes based upon the totality of the evidence that there has been substantial compliance by the Plaintiff with subdivision (2) to (6) inclusive of subsection (b). The only item that was not done is item (6) which states: "(6) if such contract or authorization pertains to any real property, include the following statement: "THE REAL ESTATE BROKER MAY BE ENTITLED TO CERTAIN LIEN RIGHTS PURSUANT TO SUBSECTION (d) OF § 20-325a
of the Connecticut General Statutes'". This language was not included in the commission agreement. However, no broker's lien rights have been sought. Additionally, Frank Fitzgerald, the attorney for and partner in the Defendant, is a sophisticated real estate investor and experienced and sophisticated real estate attorney and would know, regardless of whether that language was in the agreement, that the real estate broker would be entitled to certain lien rights. He would certainly know that the Plaintiff could obtain a prejudgment remedy attachment, and at the obtaining of any judgment against the Defendant, the broker could place a judgment lien on the Defendant's property. This Court finds that there has been substantial compliance with this subdivision as well and further, that it would be at this point inequitable to deny recovery of the broker's commission for this reason based upon the totality of the evidence.
3. Did the Plaintiff earn its commission? The answer is "yes". It is well-settled law in Connecticut that a real estate broker is entitled to a commission when he presents to the seller a buyer ready willing and able to buy under the terms set forth by the seller. It is further well-settled law in Connecticut that if it is not under the same terms, but the terms are agreed upon and accepted by the seller/landlord, then the broker is entitled to a commission. Here, the parties agreed that the location of the premises could be changed, and the terms were changed to the satisfaction of the lessor and its successor or predecessor as the case may be. Accordingly, the Plaintiff earned its commission.
4. DID THE PLAINTIFF VIOLATE CGS § 20-325a (a) AND REGULATION OFCONNECTICUT STATE AGENCIES § 20-328-8a (e)? The short answer to thisquestion is "yes".
CGS § 20-325a (a) specifically prohibits any person who is not licensed in Connecticut and who is not so licensed at the time he performed the acts or rendered the services for which recovery is sought from commencing or bringing any action in any Connecticut court to recover a commission or other payment in respect of any such acts or services.[5] As noted earlier, subsection (d) of CGS § 20-325a
provides that "nothing in said subsection (a) or subdivision (2) to (7) inclusive of subsection (b) of this section or subsection (c) of this CT Page 1438 section shall prevent any licensee from recovering any commission, compensation or other payment with respect to any acts done or services rendered, if it would be inequitable to deny such recovery and the licensee (1) substantially complied with subdivision (2) to (7), inclusive, of subsection (b) of this section or with (2) with respect to a commercial real estate transaction, has substantially complied with subdivision (2) to (6) inclusive of subsection (b) of this section or subdivision (2) of subsection (c) of this section." Emphasis added. This, however, refers to a licensee, which Stein is not. Accordingly, having an out state unlicenced broker involved is in violation of subsection (a). The substantial compliance and the provision concerning inequity then does not apply to a nonlicensee. Further, there are provisions in the Connecticut General Statutes that permitted Stein to become a licensed broker in Connecticut based upon its standing in the State of Illinois, which Stein did not choose to do.
§ 20-328-8a of the Regulations of Connecticut State Agencies, subsection (e) provides as follows: "(e) No licensee shall offer, promise, allow, give, pay or rebate, directly or indirectly, any part or share of the licensee's commission or compensation arising or accruing from any real estate transaction to any person who is engaging in the real estate business and who is not licensed as a real estate broker or real estate salesman at the time the real estate broker or real estate salesman perform the acts or render the services for which the licensee offers, promises, allows, gives, pays, or rebates such commission or compensation." This regulation clearly prohibits the Plaintiff from sharing any real estate commission with Stein. In the case of WilderGroup Inc. v. Byers 14 Conn.L.Rptr. 156, Judicial District of HartfordMarch 14, 1995, Sheldon, J., the Court concluded as follows: "In sum, the Court concludes that notwithstanding the limited substance of scope of the prohibition against fee-recovery lawsuits by licensed Connecticut real estate brokers under subsection (b) of General Statutes § 20-325a, as articulated by the Appellate Court in Condor v. Christenson11 Conn. App. 557, 564 (1987), the prohibition against such lawsuits by non-licensed persons who engage in brokerage activity for which a valid Connecticut brokerage licensee is required is absolute and unlimited." InWeid v. Westside Realtors 23 Conn.L.Rptr. 509 dated December 21, 1998,Dorsey, Judge Trial Referee, the Court cited both sections of the general statutes and the regulations that prohibit the sharing of a commission with any person who is not licensed in Connecticut and from recovering a commission if not licensed in Connecticut. Judge Dorsey, however, did not find for the Plaintiff in that particular case because it was an attempt to recover a commission already paid as opposed to a broker attempting to recover a commission. In light of all of this, this Court finds that Stein and the Plaintiff violated the said statute and the said regulation. Based upon the decision by Judge Dorsey, this may not entitle CT Page 1439 the Defendant to recover the one half commission already paid, but it does prohibit Stein from recovering a commission. Violation of this statute and this regulation is against public policy. As for the Plaintiff, not only is it prohibited from sharing any commission with Stein, but it is also prohibited from obtaining a commission. The only circumstances under which this might be accomplished in view of the violations aforementioned of the statute and regulation is if the Plaintiff was a third party beneficiary of the commission agreement or was the agent of Stein. It has neither been alleged nor proven that the Plaintiff fits into either of these categories. As for being the agent, the Plaintiff could not be an agent for a party that is committing an act in violation of the statute and regulation. As for being a third party beneficiary, it could only be a third party beneficiary based upon a commission agreement which itself violates the statute and regulation. If a third party beneficiary, the Plaintiff would be a beneficiary of an agreement that on its face is illegal because Stein is an unlicenced broker in Connecticut and, therefore, prohibited from entering into the commission agreement which is Plaintiff's Exhibit 2.
Although it may seem inequitable for the Defendant to be relieved of liability for the remainder of the commission, real estate brokers violate the applicable statutes and regulations at their peril, and this Court cannot sanction recovery that is in violation of the statutes and regulations of the State of Connecticut.
As previously noted, the Plaintiff was and is inextricably linked to Stein and cannot profit from Stein's illegality. The Plaintiff and Stein, in particular the Plaintiff, are charged with knowledge of Connecticut real estate broker statutes and regulations. Although under the statute the Court should consider whether the result would be inequitable to the Plaintiff, it is well settled law that he who seeks equity must do equity. It would be inequitable to allow the Plaintiff to intentionally or recklessly flaunt the law, which the Plaintiff has done.
For the forgoing reasons, Judgment is entered for the Defendant.
Rittenband, JTR